**NCED MENTAL HEALTH, INC. d/b/a NCED Mental Health Center, Appellant,**

v.

**Sandra KIDD, Appellee.**

No. 08–05–00270–CV.

Court of Appeals of Texas, El Paso.

July 27, 2006.

---

Katari Dawn Buck, El Paso, for Appellant.

Richard A. Olivo, El Paso, for Appellee.

Before McCLURE, CHEW, and GUADERRAMA, JJ. (GUADERRAMA, J., sitting by assignment).

## OPINION

ANN CRAWFORD McCLURE, Justice.

NCED Mental Health, Inc. d/b/a NCED Mental Health Center brings this interlocutory appeal from an order denying its motion to dismiss Sandra Kidd's suit for failure to file the expert report required by Section 74.351 of the Texas Civil Practice and Remedies Code.[1] Kidd's suit arises from alleged sexual assaults committed by

a mental health technician while Kidd was a patient at NCED. The issue before us is whether Kidd's claims against NCED for negligent hiring, sexual assault, sexual exploitation, and premises liability are health care liability claims under the Texas Medical Liability and Insurance Improvement Act (the Act). Because we conclude that they are, we reverse and remand with instructions.

## FACTUAL SUMMARY

Kidd filed an original petition on July 8, 2004 alleging that while a patient at NCED, she was sexually assaulted by a mental health technician named Emanuel Ferman. Kidd voluntarily admitted herself on May 9, 2003 to receive treatment for sexual disorders, self-mutilation tendencies, bipolar disease, and other illnesses. During her twenty-one day stay, Kidd was treated by several members of the hospital staff including Ferman, who was responsible for making routine checks of the patients during the night shift. Sometime between May 10 and May 25, Ferman allegedly entered Kidd's room and demanded that she participate in a variety of sexual acts. These acts occurred while Kidd was in a "heavy state of sleep" as a result of medication and without her knowledge or consent. Kidd also alleged that between May 25 and May 28, Ferman had sexual intercourse with her in the "group room" while she was heavily sedated. Finally, on May 29, 2003, Ferman again forced Kidd to engage in sexual acts while in the "group room." Ferman purportedly had knowledge of Kidd's medications because he had access to her medical chart. Upon learning that she would be leaving the facility, Kidd reported the sexual contact and identified Ferman. She subsequently brought suit against NCED

---

1. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon 2005).

asserting claims for negligence, gross negligence, sexual assault, sexual exploitation, and negligent hiring.[2]

On November 10, 2004, NCED filed a motion to dismiss based on Kidd's failure to file the expert report required by the Act. On December 21, 2004, Kidd filed a motion for nonsuit of her "medical malpractice claims under Chapter 74 of the Texas Civil Practice and Remedies Code." The trial court signed an order dismissing Kidd's "medical malpractice claims under Chapter 74" the same day. Kidd filed her first amended petition on January 6, 2005, alleging claims for negligent hiring, gross negligence, sexual assault, sexual exploitation, and premises liability. The trial court denied the motion to dismiss and this appeal follows.

## HEALTH CARE LIABILITY CLAIM

■ In four issues for review, NCED complains that all of Kidd's causes of action are health care liability claims. Ordinarily, we review the denial of a motion to dismiss filed pursuant to Section 74.351 under an abuse of discretion standard. *See American Transitional Care Centers of Texas, Inc. v. Palacios,* 46 S.W.3d 873, 877 (Tex.2001); *Ponce v. El Paso Healthcare System, Ltd.,* 55 S.W.3d 34, 36 (Tex. App.-El Paso 2001, pet. denied). But where, as here, the issues involve statutory construction and the applicability of Chapter 74 to the plaintiff's claims, we apply a *de novo* standard of review. *Ponce,* 55 S.W.3d at 36.

■ A cause of action against a health care provider is a health care liability claim[3] under Chapter 74 if it is based on a claimed departure from an accepted standard of medical care,[4] health care,[5] safety,[6] or professional or administrative services,[7] whether the action sounds in tort or contract. TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13)(Vernon 2005); *Diversicare General Partner, Inc. v. Rubio,* 185 S.W.3d 842 (Tex.2005); *MacGregor Medical Association v. Campbell,* 985 S.W.2d 38, 41 (Tex.1998). A cause of action alleges a departure from accepted standards of medical care or health care if the act or

---

**2.** Kidd brought the same claims against Ferman in this suit, but Ferman is not a party to this appeal.

**3.** "Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract. TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13).

**4.** "Medical care" means any act defined as practicing medicine under Section 151.002, Occupations Code, performed or furnished, or which should have been performed, by one licensed to practice medicine in this state for, to, or on behalf of a patient during the patient's care, treatment, or confinement. TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(19).

**5.** "Health care" means any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement. TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(10).

**6.** Safety is not defined by Chapter 74. Therefore, the term must be assigned its common meaning. TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(b).

**7.** "Professional or administrative services" means those duties or services that a physician or health care provider is required to provide as a condition of maintaining the physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs. TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(24).

omission complained of is an inseparable part of the rendition of medical services. *Diversicare,* 185 S.W.3d at 848; *Walden v. Jeffery,* 907 S.W.2d 446, 448 (Tex.1995). The necessity of expert testimony from a medical or health care professional to prove a claim may also be an important factor in determining whether a cause of action is an inseparable part of the rendition of medical or health care services. *Diversicare,* 185 S.W.3d at 848; *Garland Community Hospital v. Rose,* 156 S.W.3d 541, 544 (Tex.2004). However, the fact that expert testimony may not be necessary to support a verdict at trial does not necessarily mean that a claim is not a health care liability claim under Chapter 74. *Murphy v. Russell,* 167 S.W.3d 835, 838 (Tex.2005). To determine whether a cause of action is a health care liability claim, we examine the underlying nature of the claim and we are not bound by the form of the pleading. *Diversicare,* 185 S.W.3d at 847; *Ponce,* 55 S.W.3d at 38.

### Negligent Hiring

In Issue One, NCED contends that the trial court erred by concluding that Kidd's negligent hiring claim is not a health care liability claim. Kidd alleged in her amended petition that NCED has a duty to investigate an employee's criminal background where the employee is given access to a "vulnerable group," and that NCED breached that duty by failing to investigate Ferman's prior criminal history. Kidd also alleged that NCED owed her a duty to hire, supervise, train or retain competent employees who were expected to work with "fragile clients" and that NCED breached its duty by failing to adequately train and supervise Ferman in his capacity as a mental health technician.

 The general rule is that there is no duty to protect another from the conduct of a third person. *Greater Houston Transportation Company v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). An exception exists where there is a special relationship between the defendant and the injured party or between the defendant and the third person. *Id.; Doe v. Boys Clubs of Greater Dallas, Inc.,* 868 S.W.2d 942, 949 (Tex.App.-Amarillo 1994), *aff'd* 907 S.W.2d 472 (Tex.1995). In that instance, the defendant has a duty to prevent injuries to others if it reasonably appears or should appear that others might be injured. *Doe,* 868 S.W.2d at 949. A special relationship has been found to exist when an employee's duties place him in potential contact with particularly vulnerable individuals. *See Porter v. Nemir,* 900 S.W.2d 376, 386 (Tex.App.-Austin 1995, no writ)(where counselor engaged in sexual misconduct with woman enrolled in out-patient drug and alcohol program, court held that counselor's employer owed higher duty to hire and retain competent and "sexually appropriate" counselors given that program treated psychologically fragile clientele); *Doe,* 868 S.W.2d at 950–51 (employer whose function is to care for and educate children owed a higher duty to its patrons to exercise care in the selection of its employees than would other employers); *Deerings West Nursing Center v. Scott,* 787 S.W.2d 494, 495 (Tex.App.-El Paso 1990, writ denied)(nursing home had a duty to exercise reasonable care in the selection of its medical staff where nursing home hired unlicensed nurse-employee who assaulted an elderly visitor). Under the special relationship exception, there are two theories which may impose a duty on an employer: *respondeat superior* and negligent hiring. *Doe,* 868 S.W.2d at 950. Kidd bases her claims on NCED's own negligence in hiring Ferman rather than its vicarious liability for Ferman's torts under the *respondeat superior* theory. Under the negligent hiring theory, Kidd must prove that her injuries resulted from

the employment. *See Doe*, 868 S.W.2d at 950.

Essentially, Kidd's negligent hiring claim alleges that NCED violated the standard of care related to the hiring and supervision of a mental health technician who provides health care to vulnerable and fragile patients, and that she was injured as a result of Ferman's employment. According to Kidd, her vulnerability was a direct result of the medical treatment provided by NCED. It is not within the common knowledge of the general public to determine the ability of patients on certain medications to protect themselves from assaultive conduct or whether a potential target of an attack in a health care facility should be better protected and by what means. *See Diversicare*, 185 S.W.3d at 851. Thus, expert testimony would be required to prove NCED's alleged breach of the standard of care. As such, this claim is inseparable from the rendition of health care. *See Buck v. Blum*, 130 S.W.3d 285, 291–92 and n. 6 (Tex.App.-Houston [14th Dist.] 2004, no pet.). Because the claim for negligent hiring is a health care liability claim, we sustain Issue One.

*Vicarious Liability for Sexual Assault*

In its second issue, NCED maintains that Kidd's sexual assault claim is also a health care liability claim. Kidd seeks to hold NCED vicariously liable by alleging that Ferman was in the course and scope of his employment when he sexually assaulted her. An employer may be held liable for the tortious acts of an employee if the acts are within the course and scope of employment. *See Baptist Memorial Hospital System v. Sampson*, 969 S.W.2d 945, 947 (Tex.1998); *Buck*, 130

S.W.3d at 288. This requires proof that the employee is acting (1) within the general authority granted by the employer, (2) in furtherance of the employer's business, and (3) for the accomplishment of an object for which he is employed. *Buck*, 130 S.W.3d at 288. The typical *respondeat superior* claim involves an allegation of negligence on the part of the employee. *Id.* In this case, however, Kidd alleges that NCED's employee committed sexual assault, an intentional tort.

It is ordinarily not within the scope of a servant's authority to commit an assault on a third person. *Texas & Pacific Railway Company v. Hagenloh*, 151 Tex. 191, 247 S.W.2d 236, 239, 241 (1952); *Buck*, 130 S.W.3d at 288. But if an assault is so connected with and immediately arising out of authorized employment tasks as to merge the task and the assaultive conduct into one indivisible tort, it may be imputed to the employer. *Buck*, 130 S.W.3d at 288. An assault could be considered to be in the course and scope of employment when the nature of the employment necessitates the use of force, such as the duty to guard property. Thus, the use of force may be in furtherance of the employer's business even if more force than necessary is applied. *Id.* at 289 n. 2.

Kidd claims NCED is liable for the sexual assaults because it failed to investigate Ferman's background and take adequate safety measures to protect her from Ferman, whom she alleges is a convicted felon.[8] A plaintiff cannot use artful pleading to avoid the Act's requirements when the essence of the suit is a health care liability claim. *Diversicare*, 185 S.W.3d at 851. A recasting of a health

---

**8.** Kidd likely recognizes that Ferman's alleged sexual assaults against her would not be within the course and scope of his employment, and therefore, would not impose liability on

NCED under the doctrine of respondeat superior. *See Dieter v. Baker Service Tools*, 739 S.W.2d 405, 407 (Tex.App.-Corpus Christi 1987, writ denied).

care liability claim based upon physician or health care provider negligence in the garb of some other cause of action will not be allowed to circumvent the Act. *Id.* A claim that NCED breached the standard of care for safety is a health care liability claim. *See Diversicare,* 185 S.W.3d at 851–53; *Buck,* 130 S.W.3d at 291–92. We sustain Issue Two.

### Sexual Exploitation

In Issue Three, NCED argues that Kidd's cause of action for sexual exploitation is a health care liability claim. Kidd alleged that NCED failed to: (1) prevent or stop the sexual exploitation by Ferman;[9] (2) report the sexual assault to the District Attorney's Office; (3) advise Kidd of NCED's duty to report the allegations to the District Attorney and the Texas Department of Health, and (4) determine whether Kidd wished to remain anonymous.

Chapter 81 of the Civil Practice and Remedies Code addresses sexual exploitation by mental health services providers.[10] Section 81.006 places a duty to report on the employer of a mental health services provider when the employer has reasonable cause to suspect that a patient has been the victim of sexual exploitation by a mental health services provider during the course of treatment, or if the patient alleges sexual exploitation by a mental health services provider during the course of treatment. TEX.CIV.PRAC. & REM.CODE ANN. § 81.006(a). The employer must report the alleged conduct not later than the 30th day after the date the employer became aware of the conduct or the allegations to the prosecuting attorney in the county in which the alleged sexual exploitation occurred; and any state licensing board that has the responsibility for the mental health services provider's licensing. *Id.* Before making a report under this section, the reporter must inform the victim of the reporter's duty to report and determine whether the victim wants to remain anonymous. TEX.CIV.PRAC. & REM.CODE ANN. § 81.006(b). Information in a report is privileged information and is for the exclusive use of the prosecuting attorney or state licensing board that receives the information, and may not be disclosed except to the extent disclosure is consistent with the purpose for which the person first obtained the information. TEX.CIV.PRAC. & REM.CODE ANN. § 81.006(d). A person who intentionally violates subsection (a) or subsection (d) is subject to disciplinary action by the person's licensing board and also commits a class C misdemeanor. TEX.CIV. PRAC. & REM.CODE ANN. § 81.006(e).

Section 81.002 provides for a cause of action by a patient or former patient against a mental health services provider

---

9. The section of Kidd's pleadings addressing the sexual exploitation claim does not allege that NCED failed to prevent or stop the exploitation. But the pleadings expressly incorporate the allegations contained in the previous twenty-two paragraphs which include assertions that NCED failed to prevent or stop Ferman's assaults.

10. "Mental health services provider" means an individual, licensed or unlicensed, who performs or purports to perform mental health services, including a: (A) licensed social worker as defined by Section 505.002, Occupations Code; (B) chemical dependency counselor as defined by Section 504.001, Occupations Code; (C) licensed professional counselor as defined by Section 503.002, Occupations Code; (D) licensed marriage and family therapist as defined by Section 502.002, Occupations Code; (E) member of the clergy; (F) physician who is practicing medicine as defined by Section 151.002, Occupations Code; (G) psychologist offering psychological services as defined by Section 501.003, Occupations Code; or (H) special officer for mental health assignment certified under Section 1701.404, Occupations Code. TEX. CIV. PRAC. & REM.CODE ANN. § 81.001(2).

for damages for sexual exploitation if the patient or former patient suffers, directly or indirectly, a physical, mental, or emotional injury caused by, resulting from, or arising out of:

(1) sexual contact between the patient or former patient and the mental health services provider;

(2) sexual exploitation of the patient or former patient by the mental health services provider; or

(3) therapeutic deception of the patient or former patient by the mental health services provider.

TEX.CIV.PRAC. & REM.CODE ANN. § 81.002.

Pertinent to this case, Section 81.003(a)(2) provides that an employer of a mental health services provider is liable to a patient or former patient of the mental health services provider for damages if the patient or former patient is injured as described by Section 81.002; the employer knows or has reason to know that the mental health services provider engaged in the sexual exploitation of the patient or former patient; and the employer failed to:

(A) report the suspected sexual exploitation as required by Section 81.006; or

(B) take necessary action to prevent or stop the sexual exploitation by the mental health services provider.

TEX.CIV.PRAC. & REM.CODE ANN. § 81.003(a)(2). An employer is liable under Section 81.003 only to the extent that the failure to take the action described by Sections 81.003(a) and 81.003(b) was a proximate and actual cause of damages sustained by the patient. TEX.CIV.PRAC. & REM.CODE ANN. § 81.003(c).

The Civil Practice and Remedies Code defines "professional or administrative services" as those duties or services that a physician or health care provider is required to provide as a condition of maintaining the physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs. TEX.CIV.PRAC. & REM.CODE ANN. § 74.001(a)(24). To participate in Medicare and Medicaid, NCED must satisfy certain conditions. *See generally* 42 CFR §§ 482.1, 482.2, 482.11–482.13, 482.21–482.28, 482.30, 482.41, 482.43, 482.45, 482.51–482.57, 482.60–482.62. Included is a requirement that NCED protect and promote each patient's rights, including the right to receive care in a safe setting and the right to be free from all forms of abuse or harassment. *See* 42 CFR §§ 482.13, 482.13(c)(2)-(3). State law also ensures the right of patients to be free from abuse and exploitation. *See* 25 TEX.ADMIN.CODE § 404.154(24). In addition to the reporting duty imposed by Section 81.006, the Texas Administrative Code imposes a duty on a private psychiatric hospital to report any incident of abuse, including rape or sexual assault, neglect, exploitation, or illegal, unethical conduct, or unprofessional conduct to the Department of State Health Services (formerly the Texas Department of Health). *See* 25 TEX.ADMIN.CODE § 134.46(a), (c)(3). Failure to comply with these requirements subjects a facility to investigative and enforcement actions by the Department of State Health Services and could result in denial, suspension, or revocation of its license. 25 TEX.ADMIN.CODE §§ 134.81, 134.83. We conclude that the sexual exploitation cause of action is a health care liability claim because it is based on a claimed departure from an accepted standard of professional or administrative services, that is, NCED's duty to protect Kidd's right to receive care in a safe setting and to be free from all forms of abuse or harassment, and its duty to report the sexual exploitation committed by Ferman. Issue Three is sustained.

*Premises Liability*

In Issue Four, NCED challenges the trial court's conclusion that Kidd's premises liability cause of action is not a health care liability claim. Her amended petition alleges that NCED failed to adequately investigate Ferman's criminal history; failed to take appropriate and timely action in light of Ferman's criminal background; failed to provide Kidd with adequate and safe conditions from sexual predatory behavior; failed to adequately and timely report the allegations of sexual improprieties committed by Ferman; and failed to establish policies, procedures, and/or protocols requiring proper, timely, and adequate assistance to Kidd.

▇▇▇ Kidd counters that as a patient, she enjoyed the status of an invitee or business visitor entitled to the exercise of ordinary care by the hospital to keep its premises in reasonably safe condition for the expected use. She directs us to *Bush v. Green Oaks Operator, Inc.*, 39 S.W.3d 669 (Tex.App.-Dallas 2001, no pet.) and *Zuniga v. Healthcare San Antonio, Inc.*, 94 S.W.3d 778, 780 (Tex.App.-San Antonio 2002, no pet.) in support of her argument. During the pendency of this appeal, the Supreme Court has disapproved both cases. *See Diversicare*, 185 S.W.3d at 853. The obligation of a health care facility to its patients is not the same as the general duty a premises owner owes to invitees. *Diversicare*, 185 S.W.3d at 851. Health care staff make judgments about the care, treatment, and protection of individual patients and the patient populations in their facilities based on the mental and physical care the patients require. *Id.* This is distinct from the duty of ordinary care owed by premises owners to their residents and invitees. *See id.* Consequently, Kidd's allegations constitute health care liability claims because they are based on a claimed departure from the standards of care related to health care, safety, and professional and administrative services directly related to health care. For this reason, we must also sustain Issue Four.

We recognize that at the time Kidd brought her lawsuit, her allegations quite arguably fell outside of the Act. This is no longer the case. Following the guidance of *Diversicare*, we reverse the order denying NCED's motion to dismiss. We remand the cause to the trial court for entry of a judgment dismissing Kidd's claims with prejudice for failure to furnish an expert report as required by Section 74.351 of the Civil Practice and Remedies Code. The trial court shall, in accordance with Section 74.351(b)(1) of the Civil Practice and Remedies Code, award reasonable attorney's fees and costs of court incurred by NCED.