

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## NUMBERS 13-07-00713-CV & 13-08-00183-CV

HARRY E. BUTTERS, M.D.,                                    Appellant,

v.

RICARDO NOYOLA, INDIVIDUALLY
AND AS REPRESENTATIVE OF THE
ESTATE OF CONSUELO NOYOLA,
PEDRO NOYOLA, AND GLORIA N. CHAPA,            Appellees.

## NUMBERS 13-07-00765-CV & 13-08-00184-CV

ORAL JAMES, M.D.,                                          Appellant,

v.

RICARDO NOYOLA, INDIVIDUALLY
AND AS REPRESENTATIVE OF THE
ESTATE OF CONSUELO NOYOLA,
PEDRO NOYOLA, AND GLORIA N. CHAPA,            Appellees.

## NUMBERS 13-08-00038-CV & 13-08-00203-CV

LUIS LEYTON GONZALEZ, M.D.,                                Appellant,

v.

RICARDO NOYOLA, INDIVIDUALLY
AND AS REPRESENTATIVE OF THE
ESTATE OF CONSUELO NOYOLA,
PEDRO NOYOLA, AND GLORIA N. CHAPA,            Appellees.

On appeal from the 404th District Court of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Garza

This is an accelerated interlocutory appeal from the trial court's denial of motions to dismiss health care liability claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (Vernon 2008), § 74.351(b) (Vernon Supp. 2007); *see also* TEX. R. APP. P. 28.1. Appellees, Ricardo Noyola, individually and as representative of the estate of Consuelo Noyola, Pedro Noyola (collectively "the Noyolas"), and Gloria N. Chapa, filed suit against appellants, Oral James, M.D., Harry E. Butters, M.D., and Luis Leyton Gonzalez, M.D., for wrongful death and medical malpractice in connection with Consuelo's death. By one issue, appellants argue that the trial court abused its discretion in denying their motions to dismiss and in failing to award reasonable attorney's fees and costs of court. Because appellees' expert report is inadequate, we reverse the orders of the trial court and remand for proceedings consistent with this opinion.

## I. BACKGROUND

Dr. James performed a colonoscopy on Consuelo Noyola at Harlingen Medical Center on January 20, 2006. The colonoscopy was aborted, allegedly due to poor preparation by Consuelo. Dr. James then ordered a barium enema to be performed the same day. Later that day, Dr. Butters performed the barium enema. On January 22, 2006, Consuelo underwent surgery to repair a bowel perforation. The Loyolas alleged that either the colonoscopy or the barium enema caused the bowel perforation and that Consuelo subsequently developed sepsis and died because she did not receive immediate treatment to repair the perforation.

The Noyolas filed suit against appellants on September 7, 2007, claiming that Dr.

James was negligent for ordering the barium enema, Dr. Butters was negligent for performing the barium enema, and Dr. Gonzalez was negligent for failing to order surgery on January 21, 2006. To satisfy the statutory requirement, the Noyolas served appellants with an expert report by Isaac Raijman, M.D. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (Vernon Supp. 2007). Appellants filed objections to the sufficiency of the report and motions to dismiss. The trial court denied the motions.

On November 27, 2007, appellees filed their first amended petition with Chapa, Consuelo's daughter, added as a wrongful death plaintiff. Chapa served appellants with the same report from Dr. Raijman. Appellants then filed supplemental motions to dismiss as to both the Noyolas and Chapa, again claiming that the report was inadequate. The trial court denied those motions as well. Appellants filed a notice of interlocutory appeal challenging the trial court's denial of their motions.[1]

## II. ADEQUACY OF EXPERT REPORT

By their sole issue, appellants argue that because Dr. Raijman's expert report was inadequate, the trial court erred by denying their motions to dismiss and by not awarding attorney's fees and court costs.[2] We agree.

### A. Standard of Review

We review a trial court's order denying a motion to dismiss for failure to comply with the expert report requirement under an abuse of discretion standard. *NCED Mental*

---

[1] Each appellant filed an interlocutory appeal after both the denial of the motions to dismiss and the denial of the supplemental motions to dismiss. We consolidated all six causes for ease of disposition.

[2] Section 74.351(b) of the civil practice and remedies code provides:

If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall, subject to Subsection (c), enter an order that:

    (1)    awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and

    (2)    dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (Vernon Supp. 2007).

*Health, Inc. v. Kidd*, 214 S.W.3d 28, 32 (Tex. App.–El Paso 2006, no pet.) (applying abuse of discretion standard to trial court's denial of motion to dismiss); *Kendrick v. Garcia*, 171 S.W.3d 698, 702 (Tex. App.–Eastland 2005, pet. denied) (same); *see Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001) (applying abuse of discretion standard to trial court's granting of motion to dismiss).  A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles.  *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).  When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for that of the trial court.  *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).  However, a trial court has no discretion in determining what the law is or in applying the law to the facts.  *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Baylor Univ. Med. Ctr. v. Biggs*, 237 S.W.3d 909, 916 (Tex. App.–Dallas 2007, pet. denied).  A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion.  *Walker*, 827 S.W.2d at 840.

## B.    Applicable Law

Medical malpractice plaintiffs must provide each defendant physician and health care provider an expert report containing the expert's curriculum vitae and

> a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (Vernon Supp. 2007); *Bowie Mem'l Hosp*, 79 S.W.3d at 51; *see Palacios*, 46 S.W.3d at 877.  If a plaintiff timely files an expert report and the defendant moves to dismiss because of the report's inadequacy, the trial court must grant the motion "only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in [section 74.351(r)(6) of the civil practice and remedies code]." *Bowie Mem'l Hosp.*, 79 S.W.3d at 51-52; *see Palacios*, 46 S.W.3d at 878.  To constitute a "good faith effort," the report must provide enough information to fulfill two purposes:  (1) it must inform the defendant of the

specific conduct the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52; *see Palacios*, 46 S.W.3d at 879.

The trial court should look no further than the report itself, because all the information relevant to the inquiry is contained within the document's four corners. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52 (citing *Palacios*, 46 S.W.3d at 878). The report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the three elements that the civil practice and remedies code identifies: standard of care, breach, and causation. *Id.* Moreover, an expert cannot merely state conclusions about these elements; the expert must explain the basis of his or her statements to link the conclusions with the facts. *Id.* (citing *Palacios*, 46 S.W.3d at 878; *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)).

## C.    Analysis

### 1.    Claims Against Dr. James

Dr. James argues that Dr. Raijman's report fails to set forth an opinion that his challenged conduct proximately caused Noyola's bowel perforation or her death. The Noyolas argue that the following language in paragraph one of Dr. Raijman's report sufficiently states the standard of care required of Dr. James and his breach of that standard:

1.    Dr. Oral James should not have ordered a barium enema the same day he aborted a colonoscopy due to poor preparation. There was no indication to perform a barium enema in a patient the same day of aborting a colonoscopy due to poor prep. The barium enema would have been inadequate for the same reasons the colonoscopy was and it only increased potential risks. The standard of care would have been to either prep the patient for a repeat colonoscopy at a different time or to prep the patient for a barium enema at a different time. Within reasonable medical probability it is possible that this breach of standard of care could have caused the bowel perforation as suffered by Mrs. Consuelo Noyola.

. . . .

6.    The current data do not allow a specific identification of the cause of the perforation of the bowel. Clearly, it was either the colonoscopy or

5

the post-colonoscopy barium enema. Review of pre-admitting records could clarify this issue.

The Noyolas further claim that the following language from the summary paragraph in Dr. Raijman's report sufficiently describes the causation element with respect to Dr. James:

> Mrs. Consuelo Noyola suffered a bowel perforation either from an indicated procedure (colonoscopy) or from a non-indicated procedure (barium enema) . . . which negatively influenced her overall outcome. Specifically, Dr. Oral James is at fault by ordering a procedure that was not indicated at the time of order and which is associated with increased risk.

It is undisputed that Dr. James performed the aborted colonoscopy and ordered the barium enema. In his report, Dr. Raijman states that the cause of Consuelo's bowel perforation was "[c]learly . . . either the colonoscopy or the post-colonoscopy barium enema." He also states that ordering the barium enema on the same day as the colonoscopy was a breach of the standard of care required of Dr. James. However, Dr. Raijman does not opine at all on the standard of care for the performance of the colonoscopy, or whether that standard of care was breached.

Because Dr. Raijman does not state conclusively that the barium enema caused the bowel perforation, his opinion merely established the possibility that a breach of the standard of care by Dr. James caused Consuelo's injuries or death. Stating a cause as a possibility is insufficient. *See id.* at 53. "The proof must establish causal connection beyond the point of conjecture. It must show more than a possibility." *Lenger v. Physician's Gen. Hosp.*, 455 S.W.2d 703, 706 (Tex. 1970); *see Bowie Mem'l Hosp.*, 79 S.W.3d at 48; *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 559 (Tex. 1995) (stating that an expert's "failure to rule out other causes of the damage renders his opinion little more than speculation").

We conclude that Dr. Raijman's report fails to adequately state the duty or breach elements with respect to the colonoscopy, and it fails to adequately state the causation element with respect to the barium enema. The report, therefore, does not provide a basis

6

for the trial court to conclude that the claims against Dr. James have merit.[3]  *See Bowie Mem'l Hosp.*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 879.  Accordingly, the trial court abused its discretion in denying Dr. James's motions to dismiss.  *See Walker*, 827 S.W.2d at 840.

### 2.    Claims Against Dr. Butters

Dr. Butters performed the barium enema on Consuelo.  The Noyolas argue that paragraph number one of Dr. Raijman's report, quoted above in our discussion on the claims against Dr. James, applies equally to the standard of care owed by Dr. Butters in performing the barium enema.  The Noyolas further claim that the following language from paragraph number two of Dr. Raijman's report supports the breach element with respect to Dr. Butters:

> 2.    Dr. Harry E. Butters breached the standard of care by performing a barium enema in a patient such as Mrs. Consuelo Noyola.  Dr. Harry E. Butters knew that Mrs. Noyola had just had an aborted colonoscopy due to poor prep, it was a non-emergent test and, as a radiologist, must know the patient population such as Mrs. Consuelo Noyola, that is at increased risk of complications.

The Noyolas also point to the following statement contained in the summary paragraph of Dr. Raijman's report as establishing the breach element with respect to Dr. Butters:  "Dr. Harry E. Butters breached the standard of care by performing a barium enema in a patient without an appropriate indication and increased risk."  However, nowhere in the report does Dr. Raijman conclusively state that the barium enema was a cause of Consuelo's injuries or death.  Instead, the report merely states that the bowel perforation was caused by "either . . . the colonoscopy or the post-colonoscopy barium enema."

We note also that, although Dr. Raijman states that Dr. Butters "breached the standard of care by performing a barium enema in a patient such as [Consuelo]," he does

---

[3] We note also that Dr. Raijman's statement that the colonoscopy or barium enema "negatively influenced [Consuelo's] overall outcome" is vague; it is not clear whether he is claiming that the colonoscopy or the barium enema caused Consuelo's bowel perforation, her death, or both.

not specifically state his opinion as to what Dr. Butters's required standard of care was. In assessing the adequacy of an expert report, we must look only within the four corners of the report, and inferences are not permitted. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52 (citing *Palacios*, 46 S.W.3d at 878). Although Dr. Raijman clearly states his opinion on the standard of care required of Drs. James and Gonzalez, we cannot infer that these standards extend to Dr. Butters as well. *See id.*

We therefore find that Dr. Raijman's report does not adequately state the standard of care or causation elements with respect to Dr. Butters. Accordingly, we conclude that the trial court abused its discretion in denying Dr. Butters's motions to dismiss. *See Walker*, 827 S.W.2d at 840.

### 3. Claims Against Dr. Gonzalez

Dr. Gonzalez was Consuelo's attending physician at Harlingen Medical Center. He first saw Consuelo at 8:00 a.m. on January 21, 2006, after she presented to the emergency room the evening before with vaginal and rectal bleeding. At that time, Dr. Gonzalez ordered a CT scan and a gynecology consultation. The following day, Dr. Gonzalez ordered a surgical consult for "possible colon perforation." Surgery was performed later that day.

According to the Noyolas, the following portions of Dr. Raijman's report address the standard of care required of Dr. Gonzalez and his alleged breach thereof:

3. There was evidence of a bowel perforation by abdominal XR more than 24 hours before surgery was performed. In a patient with a contaminated bowel perforation, surgical exploration should have been performed immediately upon diagnosis.

. . . .

4. Dr. Luis E. Leyton-Gonzalez should have, as the admitting attending of Mrs. Consuelo Noyola, acted immediately upon knowing that the abdominal XR performed in the emergency room revealed evidence of a bowel perforation. In a patient with a history of poor bowel prep, the bowel perforation was then a contaminated one and needed immediate surgical intervention. The patient should have been seen immediately by a surgeon and operated on.

. . . .

8

Dr. Luis E. Leyton-Gonzalez breached the standard of care by failing to act promptly and appropriately after having a test available that recognized a bowel perforation.

The Noyolas additionally argue that the following language in Dr. Raijman's report supports the causation element with respect to Dr. Gonzalez:

5. There was no indication for CT scan of the abdomen and pelvis as there was already strong evidence of bowel perforation by clinical data as well as by abdominal radiograph. Obtaining a CT scan only delayed immediate appropriate care.

. . . .

7. The best possible outcome in patients with a procedure related bowel perforation is prompt recognition and immediate intervention. In this particular case, the best possible intervention, which was surgery, was not established until 2 days later. Antibiotics alone would not have been sufficient in a contaminated viscous perforation. It is well established in the medical and surgical literature that prompt intervention in bowel perforation affects outcome and survival, more so in the elderly.

Further, the summary paragraph of Dr. Raijman's report provided:

Mrs. Consuelo Noyola suffered a bowel perforation either from an indicated procedure (colonoscopy) or from a non-indicated procedure (barium enema) and did not receive indicated surgical intervention until approximately 2 days later, which negatively influenced her overall outcome.

While these statements are sufficient to establish the standard of care and breach elements with respect to Dr. Gonzalez, we find the report again lacking as to the causation element. Dr. Raijman merely states that the breach of the standard of care by Dr. Gonzalez "negatively influenced [Consuelo's] overall outcome." This vague and conclusory statement does not explain how Dr. Gonzalez's alleged breach of the standard of care proximately caused Consuelo's injuries or death. Dr. Raijman must explain the basis of his statements to link the conclusions with the facts. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52 (citing *Palacios*, 46 S.W.3d at 878; *Earle*, 998 S.W.2d at 890). By failing to do so here, he has not given the trial court a basis for concluding that the claims against Dr. Gonzalez have merit. *See id.*; *Palacios*, 46 S.W.3d at 879.

Because the report did not sufficiently state the causation element with respect to Dr. Gonzalez, we conclude that the trial court abused its discretion in denying Dr.

9

Gonzalez's motions to dismiss. *See Walker*, 827 S.W.2d at 840.

### 4. Qualifications of Dr. Raijman

Drs. James and Butters additionally complain that Dr. Raijman fails to state in his report how he is qualified to render opinions as to their conduct.

Section 74.401 of the civil practice and remedies code provides that:

[A] person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician who:

> (1)     is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;
>
> (2)     has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
>
> (3     is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

TEX. CIV. PRAC. & REM. CODE ANN § 74.401(a) (Vernon 2005).

Dr. Raijman's report merely states that he is "currently a licensed and board certified gastroenterologist in the State of Texas, and [has] been since 1993." However, his extensive curriculum vitae, provided concurrently with the report, states that he is a practicing gastroenterologist, is licensed to practice medicine in two states and in Mexico, and has written extensively on internal medicine and the treatment and care of gastrointestinal conditions.

The information contained in Dr. Raijman's curriculum vitae is sufficient to establish that he meets the statutory requirements for opining as an expert on Consuela's condition and treatment. *See id.* Accordingly, we conclude that Dr. Raijman is qualified to provide expert testimony with respect to alleged breaches in the standard of care committed by appellants.

### III. TIMELINESS OF CHAPA'S EXPERT REPORT

All three appellants further argue that Chapa's claim must be dismissed because she failed to serve an expert report on appellants within 120 days of her becoming a party

to the lawsuit. The Noyolas' original petition was filed on September 7, 2007. Chapa filed and served Dr. Raijman's report on January 10, 2008, which was more than 120 days from the date the original petition was filed. Appellants argue that it was therefore untimely.

Section 74.351(a) of the civil practice and remedies code provides in relevant part the following:

> In a health care liability claim, a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted.

*Id.* § 74.351(a). The statute defines "claimant" as "a person, including a decedent's estate, seeking or who has sought recovery of damages in a health care liability claim." *Id.* § 74.001(a)(2) (Vernon 2005). "All persons claiming to have sustained damages as the result of the bodily injury or death of a single person are considered a single claimant." *Id.*

Chapa asserts that she is entitled to rely on the report timely served by the Noyolas. Alternatively, she claims that the 120-day time period should not have commenced with respect to her claim until November 27, 2007, the date the first petition was filed that named her as a party to the lawsuit.

In the instant case, both the Noyolas and Chapa claimed to have sustained damages as a result of the bodily injuries and death of the same person—Consuelo Noyola. Chapa did not assert any additional claims or grounds for recovery; in fact, as we have noted, both the Noyolas and Chapa used the same expert report, prepared by Dr. Raijman, to support their identical claims. Therefore, the Noyolas and Chapa were clearly a "single claimant" under the definition provided by the statute. *See id.* As such, only a single expert report was required. *See Smith v. Fin. Ins. Co. of Am.*, 229 S.W.3d 405, 407 (Tex. App.–Eastland 2007, no pet.) (insurance carriers who intervened in health care liability claim seeking subrogation were entitled to rely on original plaintiff's expert report to comply with section 74.351). Accordingly, we conclude that Chapa was entitled to rely

11

on the timely expert report previously filed by the Noyolas.[4]

## IV. OPPORTUNITY TO CURE

The Supreme Court of Texas has recently held that, when elements of a timely filed expert report are found adequate by the trial court but ruled deficient by a court of appeals, one thirty-day extension to cure the report may be granted by the trial court upon remand, even if the original 120-day period for filing such a report has expired. *Leland v. Brandal*, No. 06-1028, 2008 Tex. LEXIS 574, at *7-8 (Tex. June 13, 2008); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c) (Vernon Supp. 2007). Accordingly, because we reverse the trial court's judgment denying the appellants' motions to dismiss, we remand to the trial court to determine whether to grant appellees one thirty-day extension to file a compliant expert report. *See Leland*, 2008 Tex. LEXIS 574, at *7-8; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c) (stating that, "[i]f the claimant does not receive notice of the court's ruling granting the extension until after the 120-day deadline has passed, then the 30-day extension shall run from the date the plaintiff first received the notice.").

## V. CONCLUSION

We reverse the orders of the trial court denying appellants' motions to dismiss, and we remand for the trial court to determine whether to grant appellees one thirty-day extension to file a compliant expert report as required by the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (c); *Leland*, 2008 Tex. LEXIS 574, at *7-8.

DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 29th day of August, 2008.

---

[4] Because we find that Chapa was entitled to rely on the expert report filed by the Noyolas, we need not address Chapa's separate issue regarding when the 120-day time period commenced with respect to her claim. *See* TEX. R. APP. P. 47.1