NUMBER 13-10-00633-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI -
EDINBURG 


                                                                                                                     


 

HEALTH CARE
UNLIMITED, INC.,

JOSEPH RAMON III, AND
TERESA SOTO,                 Appellants,                                                                                               Appellant,

 

v.

 

AIDA TORRES SOTO,                                                                      
 Appellee.

                                                                                                                  
     

 

On appeal from the
139th District Court 

of Hidalgo County,
Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Garza 

Memorandum Opinion by
Justice Rodriguez

 

This appeal involves the injuries
sustained by appellee Aida Torres Soto when she was hit by a truck while
crossing the street under the supervision of appellant Teresa Soto, an employee
of appellants Health Care Unlimited, Inc. (HCU) and Joseph Ramon, III. 
Appellants challenge the trial court's denial of their motion to dismiss for
failure to serve an expert report as required for health care liability
claims.  See Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(a)-(b) (West 2011).  The sole issue before
this Court is whether the trial court erred in failing to dismiss the case for
appellee's failure to provide an expert medical report because appellee's
claims are health care liability claims as a matter of law under chapter 74 of
the civil practice and remedies code. See id. § 74.001(a)(13) (West
2011).  We reverse and render, in part, and reverse and remand, in part.

I.  Background

Appellee received services from HCU
through the Texas Department of Aging and Disability's Community Based
Alternatives Program.  Through that program, HCU sends a representative to the
patient's home where a variety of services are rendered.  Appellant Soto
rendered those services for appellee at her home in McAllen, Texas, by caring
for appellee's medical and daily needs.  On February 21, 2009, appellee,
assisted by Soto, was returning home from a shopping trip when both were hit by
a truck driven by Antelmo Linon as they crossed the road.[1]

Appellee sued Soto for negligence and
sued HCU and Ramon, the owner of HCU, for vicarious liability and negligence in
hiring, supervising, and training Soto.  Appellants moved to dismiss the suit
based on appellee's failure to provide an expert medical report within 120 days
of filing the suit.  See id. § 74.351(a)-(b).  The trial court denied
appellants' motion to dismiss, and this accelerated interlocutory appeal
followed. See id. § 51.014(a)(9) (West 2008).

II.  Standard of Review and Applicable Law

Whether a claim is a health care
liability claim under section 74.351 is a question of law, which this Court
reviews de novo.  Tesoro v. Alvarez, 281 S.W.3d 654, 656 (Tex. App.—Corpus
Christi 2009, no pet.); Gomez v. Matey, 55 S.W.3d 732, 735 (Tex.
App.—Corpus Christi 2001, no pet.).  A health care liability claim is defined
as:

[A] cause of action against a health care
provider . . . for treatment, lack of

treatment, or other claimed departure from
accepted standards of medical

care,
or health care, or safety or professional or administrative services directly
related to health care, which proximately results in injury to or death

of a claimant, whether the claimant's claim
or cause of action sounds in tort

or contract.

 

Tex. Civ. Prac. & Rem. Code
Ann.
§ 74.001(a)(13).  

When determining whether a claim is a
health care liability claim, "courts are not bound by the form of the
pleading."  Harris Methodist Fort Worth v. Ollie, No. 09-0025, 2011
WL 1820880, at *2 (Tex. May 13, 2011); see Yamada v. Friend, 335 S.W.3d
192, 195-196 (Tex. 2010).  It is the gravamen of the claim that determines
whether the claim is for a departure from accepted standards of safety.  Ollie,
2011 WL 1820880, at *2.  "[I]f the act or omission that gave rise to the
claim is so integral to the rendition of medical services by the provider to be
an inseparable part of those services, it constitutes a breach of the standard
of care."  Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842,
849 (Tex. 2005).  "Services that a [health care provider] provides its
patients necessarily include those services required to meet patients'
fundamental needs . . . and safety." Ollie, 2011 WL 1820880, at
*2.  Finally, whether expert medical testimony is necessary "may also be
an important factor in determining whether a cause of action is an inseparable
part of the rendition of medical or health care services."  Diversicare,
185 S.W.3d at 848.

III.  Discussion

            By their sole issue, appellants argue that
the trial court erred in denying their motiWe would also like to address questions that you may have
relating to your internships.  on to dismiss the case for
appellee's failure to provide an expert report because appellee's claims are
health care liability claims under chapter 74 of the civil practice and
remedies code.  See Tex. Civ.
Prac. & Rem. Code Ann. §§ 74.001(a)(13), 74.351(a)-(b).  We agree. 
We will analyze in turn each claim made by appellee—that (1) HCU and Ramon were
negligent in hiring, supervising, and training of Soto; (2) Soto was negligent
in failing to look after the safety of appellee; and (3) HCU and Ramon are
vicariously liable for the acts or omissions of Soto—to determine if they are
health care liability claims under the law.[2]

A. 
HCU and Ramon Were Negligent in Hiring, Supervising, and Training

            Appellee argues that this is not a health
care liability claim because HCU and Ramon were merely ordinarily negligent in hiring,
supervising, and training Soto.  However, the negligent hiring, supervising,
and training of health care employees constitutes a deviation from the accepted
standards of health care and safety.  See Marks v. St. Lukes
Episcopal Hosp., 319 S.W.3d 658, 661-62.  Moreover, it is not within the
common knowledge of the average person "to determine the appropriate . . .
training[] and certifications of medical professionals necessary to care for
and protect patients . . . ."  Diversicare, 185 S.W.3d at 851; see
NCED Mental Health, Inc. v. Kidd, 214 S.W.3d 28, 34 (Tex. App.—El Paso
2006, no pet.).  Thus, expert medical testimony may be necessary for appellee's
negligent hiring, supervision, and training claim.  See Diversicare,
185 S.W.3d at 848 (explaining that one factor in determining if a claim is a
health care liability claim is whether expert medical testimony is necessary). 
We conclude that appellee's negligent hiring, supervising, and training claim
is a health care liability claim.

B. 
Soto Was Negligent

            Next, appellee argues that Soto was negligent
in failing to look after the safety and security of appellee.  More
specifically, appellee argues that Soto's negligence in allowing appellee to
cross a busy street and failing to look for traffic is an ordinary negligence
claim and does not involve medical care, treatment, or confinement that
implicates chapter 74.  

However, it is the gravamen of a
plaintiff's claim that determines whether she is alleging a departure from
accepted standards of safety, and "courts are not bound by the form of the
pleading."  Ollie, 2011 WL 1820880, at *2; see Yamada, 335
S.W.3d at 196.  The underlying nature of appellee's claim is that Soto, as a
health caregiver, departed from accepted standards of safety by failing to
protect appellee, an elderly woman, from the dangerous situation posed by
crossing a busy street on foot.  When home health and other community based
services are being provided to patients who need assistance with almost every
aspect of their lives, the supervision of patients is an inseparable part of
those services.  See Diversicare, 185 S.W.3d at 851; see also Educare
Community Living—Texas Living Centers, Inc. v. Celedon, No. 13-08-00416-CV,
2009 WL 3210950, at *3 (Tex. App.—Corpus Christi Oct. 8, 2009) (mem. op.) (holding
that appellant's claim that health care facility was negligent in not locking
shed was "artful pleading" and was really a challenge to the
standards of safety at the facility and was a health care liability claim). 
"And services a [health care provider] provides its patients necessarily
include those services required to meet patients' fundamental needs such as . .
. safety."  Ollie, 2011 WL 1820880, at *2; see Omaha
Healthcare Center, LLC v. Johnson, No. 08-0231, 2011 WL 2586851, at *2
(Tex. July 1, 2011) ("'[H]ealth care' involves more than acts of physical
care and medical diagnosis and treatment.  It involves 'any act performed
or furnished, or that should have been performed or furnished, by any health
care provider for, to, or on behalf of a patient during the patient's ...
confinement.'" (emphasis in original)) (citations omitted).  Relevant to
this case, when a patient claims that the health care provider was negligent in
failing to properly care for the patient's safety, those claims are health care
liability claims.  See Oak Park, Inc. v. Harrison, 206 S.W.3d 133 (Tex.
App.—Eastland 2006, no pet.) (claims that health care provider was negligent in
failing to supervise patients and care for patient's safety made by patient at
inpatient drug rehabilitation facility were health care liability claims); see
also Omaha Healthcare, 2011 WL 2586851, at *2 (holding that the
plaintiff's negligence claim arising from a spider bite she received as a
patient in a nursing home was a health care liability claim because it alleged
a failure "to take appropriate actions to protect [the plaintiff] from
danger or harm"); Celedon,  2009 WL 3210950, at *3.  Here,
the gravamen of appellee's claim is that Soto was negligent for both failing to
provide for appellee's safety and for failing to supervise appellee properly.  We
therefore conclude that appellee's claim that Soto was negligent in caring for
her safety is a health care liability claim.  See Diversicare, 185
S.W.3d at 851.

C. 
HCU and Ramon Are Vicariously Liable

            Finally, appellee argues that HCU and Ramon
were vicariously liable for Soto's negligent acts or omissions.  "However,
Texas courts have clearly held that a plaintiff cannot circumvent the expert
report requirement by artfully pleading her health care liability claim based
upon the negligence of the health care provider as some other cause of action,
such as vicarious liability."  Christus Spohn Health Sys. Corp. v.
Sanchez, 299 S.W.3d 868, 875 (Tex. App.—Corpus Christi 2009, pet. denied). 
Having already concluded that appellee's negligence claim against Soto is a
health care liability claim, we likewise conclude that appellee's vicarious
liability claim against HCU and Ramon, based on that same alleged conduct by
Soto, falls under chapter 74.  See Garland Cmty. Hosp. v. Rose, 156
S.W.3d 541, 543 (Tex. 2004); Kidd, 214 S.W.3d at 34–35; Oak Park,
206 S.W.3d at 140-41.

D. 
Summary

            All claims made by appellee in this case are
health care liability claims.  And because appellee failed to provide an expert
report within 120 days from the filing of her original suit, we conclude that the
trial court erred in denying appellants' motion to dismiss.  See Tex. Civ. Prac. & Rem. Code Ann. §
74.351(a)-(b).  Appellants' sole issue is sustained.

IV.  Conclusion

We reverse the trial court's denial of
appellants' motion to dismiss, render judgment dismissing appellee's claims
with prejudice, and remand for the determination of reasonable attorney's fees
and costs owed to appellants.  See id. § 74.351(b).

 

 

                                                                                                             NELDA
V. RODRIGUEZ

                                                                                                             Justice

 

Delivered
and filed the  

21st
day of July, 2011.









[1]
Linon is not a party to the lawsuit.





[2] We note at the outset that, for the first time at oral
argument, appellee challenged appellants' status as health care providers.  We
are not persuaded by appellee's late challenge to this element.  For purposes
of section 74.001, a "health care institution[]," includes "a
home and community support services agency."  Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(12)(A)(vii),
(11)(E) (West 2011).  The record indicates that HCU provides health care
services in patients' homes through the Texas Department of Aging and
Disability's Community Based Alternatives Program.  What's more, appellee
states in her pleading that HCU is "a business that specializes in home
health care . . . ."  Thus, we conclude that HCU is a health care
institution as defined by the statute.  See Valley Baptist Med. Ctr. v. Azua,
198 S.W.3d 810, 814 (Tex. App.—Corpus Christi 2006, no pet.).