COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


NUMBERS 13-07-00713-CV & 13-08-00183-CV


HARRY E. BUTTERS, M.D., Appellant,

 

v.



RICARDO NOYOLA, INDIVIDUALLY 

AND AS REPRESENTATIVE OF THE 

ESTATE OF CONSUELO NOYOLA, 

PEDRO NOYOLA, AND GLORIA N. CHAPA, Appellees.

 


NUMBERS 13-07-00765-CV & 13-08-00184-CV


ORAL JAMES, M.D., Appellant,


v.



RICARDO NOYOLA, INDIVIDUALLY 

AND AS REPRESENTATIVE OF THE 

ESTATE OF CONSUELO NOYOLA, 

PEDRO NOYOLA, AND GLORIA N. CHAPA, Appellees.

 


NUMBERS 13-08-00038-CV & 13-08-00203-CV


LUIS LEYTON GONZALEZ, M.D., Appellant,


v.



RICARDO NOYOLA, INDIVIDUALLY 

AND AS REPRESENTATIVE OF THE 

ESTATE OF CONSUELO NOYOLA, 

PEDRO NOYOLA, AND GLORIA N. CHAPA, Appellees.

 


On appeal from the 404th District Court of Cameron County, Texas.


 




MEMORANDUM OPINION


Before Justices Rodriguez, Garza, and Vela


Memorandum Opinion by Justice Garza



 This is an accelerated interlocutory appeal from the trial court's denial of motions
to dismiss health care liability claims. See Tex. Civ. Prac. & Rem. Code Ann. §
51.014(a)(9) (Vernon 2008), § 74.351(b) (Vernon Supp. 2007); see also Tex. R. App. P.
28.1. Appellees, Ricardo Noyola, individually and as representative of the estate of
Consuelo Noyola, Pedro Noyola (collectively "the Noyolas"), and Gloria N. Chapa, filed suit
against appellants, Oral James, M.D., Harry E. Butters, M.D., and Luis Leyton Gonzalez,
M.D., for wrongful death and medical malpractice in connection with Consuelo's death. By
one issue, appellants argue that the trial court abused its discretion in denying their
motions to dismiss and in failing to award reasonable attorney's fees and costs of court. 
Because appellees' expert report is inadequate, we reverse the orders of the trial court and
remand for proceedings consistent with this opinion.

I. Background

 Dr. James performed a colonoscopy on Consuelo Noyola at Harlingen Medical
Center on January 20, 2006. The colonoscopy was aborted, allegedly due to poor
preparation by Consuelo. Dr. James then ordered a barium enema to be performed the
same day. Later that day, Dr. Butters performed the barium enema. On January 22, 2006,
Consuelo underwent surgery to repair a bowel perforation. The Loyolas alleged that either
the colonoscopy or the barium enema caused the bowel perforation and that Consuelo
subsequently developed sepsis and died because she did not receive immediate treatment
to repair the perforation. 

 The Noyolas filed suit against appellants on September 7, 2007, claiming that Dr.
James was negligent for ordering the barium enema, Dr. Butters was negligent for
performing the barium enema, and Dr. Gonzalez was negligent for failing to order surgery
on January 21, 2006. To satisfy the statutory requirement, the Noyolas served appellants
with an expert report by Isaac Raijman, M.D. See Tex. Civ. Prac. & Rem. Code Ann. §
74.351(a) (Vernon Supp. 2007). Appellants filed objections to the sufficiency of the report
and motions to dismiss. The trial court denied the motions.

 On November 27, 2007, appellees filed their first amended petition with Chapa,
Consuelo's daughter, added as a wrongful death plaintiff. Chapa served appellants with
the same report from Dr. Raijman. Appellants then filed supplemental motions to dismiss
as to both the Noyolas and Chapa, again claiming that the report was inadequate. The trial
court denied those motions as well. Appellants filed a notice of interlocutory appeal
challenging the trial court's denial of their motions. (1)

II. Adequacy of Expert Report

 By their sole issue, appellants argue that because Dr. Raijman's expert report was
inadequate, the trial court erred by denying their motions to dismiss and by not awarding
attorney's fees and court costs. (2)
 We agree.

A. Standard of Review

 We review a trial court's order denying a motion to dismiss for failure to comply with
the expert report requirement under an abuse of discretion standard. NCED Mental
Health, Inc. v. Kidd, 214 S.W.3d 28, 32 (Tex. App.-El Paso 2006, no pet.) (applying abuse
of discretion standard to trial court's denial of motion to dismiss); Kendrick v. Garcia, 171
S.W.3d 698, 702 (Tex. App.-Eastland 2005, pet. denied) (same); see Am. Transitional
Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001) (applying abuse of
discretion standard to trial court's granting of motion to dismiss). A trial court abuses its
discretion if it acts in an arbitrary or unreasonable manner or without reference to any
guiding rules or principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238,
241-42 (Tex. 1985). When reviewing matters committed to the trial court's discretion, we
may not substitute our own judgment for that of the trial court. Bowie Mem'l Hosp. v.
Wright, 79 S.W.3d 48, 52 (Tex. 2002). However, a trial court has no discretion in
determining what the law is or in applying the law to the facts. Walker v. Packer, 827
S.W.2d 833, 840 (Tex. 1992); Baylor Univ. Med. Ctr. v. Biggs, 237 S.W.3d 909, 916 (Tex.
App.-Dallas 2007, pet. denied). A clear failure by the trial court to analyze or apply the law
correctly will constitute an abuse of discretion. Walker, 827 S.W.2d at 840.

B. Applicable Law

 Medical malpractice plaintiffs must provide each defendant physician and health
care provider an expert report containing the expert's curriculum vitae and

a fair summary of the expert's opinions as of the date of the report regarding
applicable standards of care, the manner in which the care rendered by the
physician or health care provider failed to meet the standards, and the causal
relationship between that failure and the injury, harm, or damages claimed.


Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (Vernon Supp. 2007); Bowie Mem'l Hosp,
79 S.W.3d at 51; see Palacios, 46 S.W.3d at 877. If a plaintiff timely files an expert report
and the defendant moves to dismiss because of the report's inadequacy, the trial court
must grant the motion "only if it appears to the court, after hearing, that the report does not
represent a good faith effort to comply with the definition of an expert report in [section
74.351(r)(6) of the civil practice and remedies code]." Bowie Mem'l Hosp., 79 S.W.3d at
51-52; see Palacios, 46 S.W.3d at 878. To constitute a "good faith effort," the report must
provide enough information to fulfill two purposes: (1) it must inform the defendant of the
specific conduct the plaintiff has called into question, and (2) it must provide a basis for the
trial court to conclude that the claims have merit. Bowie Mem'l Hosp., 79 S.W.3d at 52;
see Palacios, 46 S.W.3d at 879.

 The trial court should look no further than the report itself, because all the
information relevant to the inquiry is contained within the document's four corners. Bowie
Mem'l Hosp., 79 S.W.3d at 52 (citing Palacios, 46 S.W.3d at 878). The report need not
marshal all the plaintiff's proof, but it must include the expert's opinion on each of the three
elements that the civil practice and remedies code identifies: standard of care, breach, and
causation. Id. Moreover, an expert cannot merely state conclusions about these elements;
the expert must explain the basis of his or her statements to link the conclusions with the
facts. Id. (citing Palacios, 46 S.W.3d at 878; Earle v. Ratliff, 998 S.W.2d 882, 890 (Tex.
1999)).

C. Analysis

 1. Claims Against Dr. James

 Dr. James argues that Dr. Raijman's report fails to set forth an opinion that his
challenged conduct proximately caused Noyola's bowel perforation or her death. The
Noyolas argue that the following language in paragraph one of Dr. Raijman's report
sufficiently states the standard of care required of Dr. James and his breach of that
standard:

1. Dr. Oral James should not have ordered a barium enema the same
day he aborted a colonoscopy due to poor preparation. There was no
indication to perform a barium enema in a patient the same day of
aborting a colonoscopy due to poor prep. The barium enema would
have been inadequate for the same reasons the colonoscopy was
and it only increased potential risks. The standard of care would have
been to either prep the patient for a repeat colonoscopy at a different
time or to prep the patient for a barium enema at a different time. 
Within reasonable medical probability it is possible that this breach of
standard of care could have caused the bowel perforation as suffered
by Mrs. Consuelo Noyola.


. . . .


6. The current data do not allow a specific identification of the cause of
the perforation of the bowel. Clearly, it was either the colonoscopy or
the post-colonoscopy barium enema. Review of pre-admitting records
could clarify this issue.


 The Noyolas further claim that the following language from the summary paragraph
in Dr. Raijman's report sufficiently describes the causation element with respect to Dr.
James:

Mrs. Consuelo Noyola suffered a bowel perforation either from an indicated
procedure (colonoscopy) or from a non-indicated procedure (barium enema)
. . . which negatively influenced her overall outcome. Specifically, Dr. Oral
James is at fault by ordering a procedure that was not indicated at the time
of order and which is associated with increased risk.


 It is undisputed that Dr. James performed the aborted colonoscopy and ordered the
barium enema. In his report, Dr. Raijman states that the cause of Consuelo's bowel
perforation was "[c]learly . . . either the colonoscopy or the post-colonoscopy barium
enema." He also states that ordering the barium enema on the same day as the
colonoscopy was a breach of the standard of care required of Dr. James. However, Dr.
Raijman does not opine at all on the standard of care for the performance of the
colonoscopy, or whether that standard of care was breached.

 Because Dr. Raijman does not state conclusively that the barium enema caused the
bowel perforation, his opinion merely established the possibility that a breach of the
standard of care by Dr. James caused Consuelo's injuries or death. Stating a cause as
a possibility is insufficient. See id. at 53. "The proof must establish causal connection
beyond the point of conjecture. It must show more than a possibility." Lenger v.
Physician's Gen. Hosp., 455 S.W.2d 703, 706 (Tex. 1970); see Bowie Mem'l Hosp., 79
S.W.3d at 48; E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 559 (Tex.
1995) (stating that an expert's "failure to rule out other causes of the damage renders his
opinion little more than speculation").

 We conclude that Dr. Raijman's report fails to adequately state the duty or breach
elements with respect to the colonoscopy, and it fails to adequately state the causation
element with respect to the barium enema. The report, therefore, does not provide a basis
for the trial court to conclude that the claims against Dr. James have merit. (3) See Bowie
Mem'l Hosp., 79 S.W.3d at 52; Palacios, 46 S.W.3d at 879. Accordingly, the trial court
abused its discretion in denying Dr. James's motions to dismiss. See Walker, 827 S.W.2d
at 840.

 2. Claims Against Dr. Butters

 Dr. Butters performed the barium enema on Consuelo. The Noyolas argue that
paragraph number one of Dr. Raijman's report, quoted above in our discussion on the
claims against Dr. James, applies equally to the standard of care owed by Dr. Butters in
performing the barium enema. The Noyolas further claim that the following language from
paragraph number two of Dr. Raijman's report supports the breach element with respect
to Dr. Butters:

2. Dr. Harry E. Butters breached the standard of care by performing a
barium enema in a patient such as Mrs. Consuelo Noyola. Dr. Harry
E. Butters knew that Mrs. Noyola had just had an aborted
colonoscopy due to poor prep, it was a non-emergent test and, as a
radiologist, must know the patient population such as Mrs. Consuelo
Noyola, that is at increased risk of complications.


 The Noyolas also point to the following statement contained in the summary
paragraph of Dr. Raijman's report as establishing the breach element with respect to Dr.
Butters: "Dr. Harry E. Butters breached the standard of care by performing a barium
enema in a patient without an appropriate indication and increased risk." However,
nowhere in the report does Dr. Raijman conclusively state that the barium enema was a
cause of Consuelo's injuries or death. Instead, the report merely states that the bowel
perforation was caused by "either . . . the colonoscopy or the post-colonoscopy barium
enema."

 We note also that, although Dr. Raijman states that Dr. Butters "breached the
standard of care by performing a barium enema in a patient such as [Consuelo]," he does
not specifically state his opinion as to what Dr. Butters's required standard of care was. 
In assessing the adequacy of an expert report, we must look only within the four corners
of the report, and inferences are not permitted. Bowie Mem'l Hosp., 79 S.W.3d at 52
(citing Palacios, 46 S.W.3d at 878). Although Dr. Raijman clearly states his opinion on the
standard of care required of Drs. James and Gonzalez, we cannot infer that these
standards extend to Dr. Butters as well. See id.

 We therefore find that Dr. Raijman's report does not adequately state the standard
of care or causation elements with respect to Dr. Butters. Accordingly, we conclude that
the trial court abused its discretion in denying Dr. Butters's motions to dismiss. See
Walker, 827 S.W.2d at 840.

 3. Claims Against Dr. Gonzalez

 Dr. Gonzalez was Consuelo's attending physician at Harlingen Medical Center. He
first saw Consuelo at 8:00 a.m. on January 21, 2006, after she presented to the emergency
room the evening before with vaginal and rectal bleeding. At that time, Dr. Gonzalez
ordered a CT scan and a gynecology consultation. The following day, Dr. Gonzalez
ordered a surgical consult for "possible colon perforation." Surgery was performed later
that day.

 According to the Noyolas, the following portions of Dr. Raijman's report address the
standard of care required of Dr. Gonzalez and his alleged breach thereof:

3. There was evidence of a bowel perforation by abdominal XR more
than 24 hours before surgery was performed. In a patient with a
contaminated bowel perforation, surgical exploration should have
been performed immediately upon diagnosis.


. . . .


4. Dr. Luis E. Leyton-Gonzalez should have, as the admitting attending
of Mrs. Consuelo Noyola, acted immediately upon knowing that the
abdominal XR performed in the emergency room revealed evidence
of a bowel perforation. In a patient with a history of poor bowel prep,
the bowel perforation was then a contaminated one and needed
immediate surgical intervention. The patient should have been seen
immediately by a surgeon and operated on.


. . . .


Dr. Luis E. Leyton-Gonzalez breached the standard of care by failing to act
promptly and appropriately after having a test available that recognized a
bowel perforation.


 The Noyolas additionally argue that the following language in Dr. Raijman's report
supports the causation element with respect to Dr. Gonzalez:

5. There was no indication for CT scan of the abdomen and pelvis as
there was already strong evidence of bowel perforation by clinical
data as well as by abdominal radiograph. Obtaining a CT scan only
delayed immediate appropriate care.


. . . .


7. The best possible outcome in patients with a procedure related bowel
perforation is prompt recognition and immediate intervention. In this
particular case, the best possible intervention, which was surgery, was
not established until 2 days later. Antibiotics alone would not have
been sufficient in a contaminated viscous perforation. It is well
established in the medical and surgical literature that prompt
intervention in bowel perforation affects outcome and survival, more
so in the elderly.


 Further, the summary paragraph of Dr. Raijman's report provided:

Mrs. Consuelo Noyola suffered a bowel perforation either from an indicated
procedure (colonoscopy) or from a non-indicated procedure (barium enema)
and did not receive indicated surgical intervention until approximately 2 days
later, which negatively influenced her overall outcome.


 While these statements are sufficient to establish the standard of care and breach
elements with respect to Dr. Gonzalez, we find the report again lacking as to the causation
element. Dr. Raijman merely states that the breach of the standard of care by Dr.
Gonzalez "negatively influenced [Consuelo's] overall outcome." This vague and conclusory
statement does not explain how Dr. Gonzalez's alleged breach of the standard of care
proximately caused Consuelo's injuries or death. Dr. Raijman must explain the basis of
his statements to link the conclusions with the facts. Bowie Mem'l Hosp., 79 S.W.3d at 52
(citing Palacios, 46 S.W.3d at 878; Earle, 998 S.W.2d at 890). By failing to do so here, he
has not given the trial court a basis for concluding that the claims against Dr. Gonzalez
have merit. See id.; Palacios, 46 S.W.3d at 879. 

 Because the report did not sufficiently state the causation element with respect to
Dr. Gonzalez, we conclude that the trial court abused its discretion in denying Dr.
Gonzalez's motions to dismiss. See Walker, 827 S.W.2d at 840.

 4. Qualifications of Dr. Raijman

 Drs. James and Butters additionally complain that Dr. Raijman fails to state in his
report how he is qualified to render opinions as to their conduct.

 Section 74.401 of the civil practice and remedies code provides that:

[A] person may qualify as an expert witness on the issue of whether the
physician departed from accepted standards of medical care only if the
person is a physician who:


 (1) is practicing medicine at the time such testimony is given or
was practicing medicine at the time the claim arose;


 (2) has knowledge of accepted standards of medical care for the
diagnosis, care, or treatment of the illness, injury, or condition
involved in the claim; and


 (3 is qualified on the basis of training or experience to offer an
expert opinion regarding those accepted standards of medical
care.


Tex. Civ. Prac. & Rem. Code Ann § 74.401(a) (Vernon 2005).

 Dr. Raijman's report merely states that he is "currently a licensed and board certified
gastroenterologist in the State of Texas, and [has] been since 1993." However, his
extensive curriculum vitae, provided concurrently with the report, states that he is a
practicing gastroenterologist, is licensed to practice medicine in two states and in Mexico,
and has written extensively on internal medicine and the treatment and care of
gastrointestinal conditions.

 The information contained in Dr. Raijman's curriculum vitae is sufficient to establish
that he meets the statutory requirements for opining as an expert on Consuela's condition
and treatment. See id. Accordingly, we conclude that Dr. Raijman is qualified to provide
expert testimony with respect to alleged breaches in the standard of care committed by
appellants.

III. Timeliness of Chapa's Expert Report

 All three appellants further argue that Chapa's claim must be dismissed because
she failed to serve an expert report on appellants within 120 days of her becoming a party
to the lawsuit. The Noyolas' original petition was filed on September 7, 2007. Chapa filed
and served Dr. Raijman's report on January 10, 2008, which was more than 120 days from
the date the original petition was filed. Appellants argue that it was therefore untimely.

 Section 74.351(a) of the civil practice and remedies code provides in relevant part
the following:

In a health care liability claim, a claimant shall, not later than the 120th day
after the date the original petition was filed, serve on each party or the party's
attorney one or more expert reports, with a curriculum vitae of each expert
listed in the report for each physician or health care provider against whom
a liability claim is asserted.


Id. § 74.351(a). The statute defines "claimant" as "a person, including a decedent's estate,
seeking or who has sought recovery of damages in a health care liability claim." Id. §
74.001(a)(2) (Vernon 2005). "All persons claiming to have sustained damages as the
result of the bodily injury or death of a single person are considered a single claimant." Id.

 Chapa asserts that she is entitled to rely on the report timely served by the Noyolas. 
Alternatively, she claims that the 120-day time period should not have commenced with
respect to her claim until November 27, 2007, the date the first petition was filed that
named her as a party to the lawsuit.

 In the instant case, both the Noyolas and Chapa claimed to have sustained
damages as a result of the bodily injuries and death of the same person--Consuelo
Noyola. Chapa did not assert any additional claims or grounds for recovery; in fact, as we
have noted, both the Noyolas and Chapa used the same expert report, prepared by Dr.
Raijman, to support their identical claims. Therefore, the Noyolas and Chapa were clearly
a "single claimant" under the definition provided by the statute. See id. As such, only a
single expert report was required. See Smith v. Fin. Ins. Co. of Am., 229 S.W.3d 405, 407
(Tex. App.-Eastland 2007, no pet.) (insurance carriers who intervened in health care
liability claim seeking subrogation were entitled to rely on original plaintiff's expert report
to comply with section 74.351). Accordingly, we conclude that Chapa was entitled to rely
on the timely expert report previously filed by the Noyolas. (4)

IV. Opportunity to Cure

 The Supreme Court of Texas has recently held that, when elements of a timely filed
expert report are found adequate by the trial court but ruled deficient by a court of appeals,
one thirty-day extension to cure the report may be granted by the trial court upon remand,
even if the original 120-day period for filing such a report has expired. Leland v. Brandal,
No. 06-1028, 2008 Tex. LEXIS 574, at *7-8 (Tex. June 13, 2008); see Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(c) (Vernon Supp. 2007). Accordingly, because we reverse the
trial court's judgment denying the appellants' motions to dismiss, we remand to the trial
court to determine whether to grant appellees one thirty-day extension to file a compliant
expert report. See Leland, 2008 Tex. LEXIS 574, at *7-8; see also Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(c) (stating that, "[i]f the claimant does not receive notice of the court's
ruling granting the extension until after the 120-day deadline has passed, then the 30-day
extension shall run from the date the plaintiff first received the notice.").

V. Conclusion

 We reverse the orders of the trial court denying appellants' motions to dismiss, and
we remand for the trial court to determine whether to grant appellees one thirty-day
extension to file a compliant expert report as required by the civil practice and remedies
code. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (c); Leland, 2008 Tex. LEXIS
574, at *7-8.




 DORI CONTRERAS GARZA,

 Justice


Memorandum Opinion delivered and 

filed this the 29th day of August, 2008.
1. Each appellant filed an interlocutory appeal after both the denial of the motions to dismiss and the
denial of the supplemental motions to dismiss. We consolidated all six causes for ease of disposition.
2. Section 74.351(b) of the civil practice and remedies code provides:


If, as to a defendant physician or health care provider, an expert report has not been served
within the period specified by Subsection (a), the court, on the motion of the affected
physician or health care provider, shall, subject to Subsection (c), enter an order that:


 (1) awards to the affected physician or health care provider reasonable
attorney's fees and costs of court incurred by the physician or health care
provider; and


 (2) dismisses the claim with respect to the physician or health care provider,
with prejudice to the refiling of the claim.


Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (Vernon Supp. 2007).

3. We note also that Dr. Raijman's statement that the colonoscopy or barium enema "negatively
influenced [Consuelo's] overall outcome" is vague; it is not clear whether he is claiming that the colonoscopy
or the barium enema caused Consuelo's bowel perforation, her death, or both.
4. Because we find that Chapa was entitled to rely on the expert report filed by the Noyolas, we need
not address Chapa's separate issue regarding when the 120-day time period commenced with respect to her
claim. See Tex. R. App. P. 47.1