

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00398-CV

**COLLEGE STATION MEDICAL CENTER, LLC,**

                                                   **Appellant**

 **v.**

**ALMA DOREEN TODD,**

                                                   **Appellee**

### From the 85th District Court
### Brazos County, Texas
### Trial Court No. 09-000300-CV-85

## MEMORANDUM  OPINION

Alma Doreen Todd sued College Station Medical Center, LLC for injuries she sustained from a fall while trying to make her way to the bathroom in her hospital room.  Because the trial court erred in failing to dismiss Todd's vicarious liability claims and her alleged premises liability claims, we reverse and remand the trial court's order which dismissed in part and denied in part CSMC's motions to dismiss.

### BACKGROUND

Todd was admitted to College Station Medical Center for corrective surgery. After surgery, Todd allegedly called repeatedly for assistance to go to the restroom.

When no one responded, she attempted to get up and go on her own. She fell, suffering cuts and broken bones. Todd filed her original petition against CSMC on February 3, 2009 alleging negligence of CSMC based on direct and vicarious liability claims. But in her original petition, Todd did not identify any specific employee's conduct as a basis of her claims. On March 6, 2009, well within the 120-day deadline, CSMC was served with a report and curriculum vitae from a nurse, S. Francis Scholl Foster. CSMC filed objections to this report. No other reports were served on CSMC until June 8 and June 12, 2009, outside the 120-day deadline. CSMC filed two motions to dismiss pursuant to section 74.351(b) of the Texas Civil Practice and Remedies Code contending that no expert report was filed and a dismissal of Todd's claims was required.

At the conclusion of the first hearing, the trial court stated on the record that CSMC's motion was granted as to Todd's direct liability claims but denied as to Todd's vicarious liability claims. No written order based on that hearing was ever signed. After the hearing, rather than request an extension of time in which to file an expert report, Todd amended her petition to delete her direct liability claims against CSMC and added what she alleged to be a premises liability claim. CSMC filed another motion to dismiss pursuant to section 74.351(b) again alleging that no expert report was filed and that a dismissal of Todd's claims, including the premises liability claims, was required. Todd responded to the second motion but again did not request an extension of time in which to file an expert report. After a second hearing, the trial court again granted CSMC's motion as to the formerly included direct liability claims, but denied the motion as to the vicarious liability claims and premises liability claim. A written

order was signed on November 19, 2009. CSMC appeals the trial court's denial of its motion to dismiss as to Todd's vicarious liability claims and premises liability claim. Todd, however, does not contest the validity of the trial court's order dismissing her direct liability claims.

## APPLICABLE LAW

Section 74.351 of the Civil Practices and Remedies Code provides that within 120 days of filing a health care liability claim, a claimant must serve a curriculum vitae and one or more expert reports regarding every defendant against whom a health care claim is asserted. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (Vernon Supp. 2009). "Section 74.351 has numerous subparts, including:

. subpart (b) requiring trial courts to dismiss a claim with prejudice and award fees if 'an expert report has not been served' by the statutory deadline;

. subpart (c) allowing a 30-day extension of the deadline if a report is found inadequate; and

. subpart (l) providing that a motion challenging a report's adequacy should be granted only if the report does not represent a good-faith effort to comply with the statute." *Lewis v. Funderburk*, 253 S.W.3d 204, 207 (Tex. 2008) (footnotes omitted); TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b), (c), (l) (Vernon Supp. 2009).

We review a trial court's denial of a motion to dismiss under section 74.351 for abuse of discretion. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001).

## NO REPORT

In its first issue, CSMC argues that the trial court abused its discretion in denying CSMC's motion to dismiss when Todd failed to serve CSMC with an expert report. CSMC contends that the only report served within 120 days after the filing of Todd's original petition was the report of a nurse who is statutorily disqualified from rendering an opinion on causation. Thus, CSMC argues, the trial court should have dismissed Todd's vicarious liability claims.

To the extent Todd alleges that CSMC is liable vicariously for its employees actions, the expert report requirement is fulfilled as to CSMC if the report is adequate as to its employees. *See Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 672 (Tex. 2008). An "expert report" means:

> A written report by *an expert* that provides a fair summary of the expert's opinions as of the date of the report regarding the applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (Vernon Supp. 2009) (emphasis added). The report must include the expert's opinion on each of the three elements that the statute identifies: standard of care, breach, and causal relationship. *Bowie*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 878. An expert as to the causal relationship between the injury claimed and the breach of the standard of care is statutorily defined as "a *physician* who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(D) (Vernon Supp. 2009) (emphasis added). Further, *only* a physician who is otherwise qualified to render

opinions on that causal relationship under the Texas Rules of Evidence may qualify as an expert. TEX. CIV. PRAC. & REM. CODE ANN. § 74.403(a) (Vernon Supp. 2009). So, before a document can be considered an expert report, it must be rendered by one who fits the definition of an expert and who is qualified to testify as an expert on the particular subject-matter. *See Chisholm v. Maron*, 63 S.W.3d 903, 907 (Tex. App.— Amarillo 2001, no pet.); *Hopkins County Hosp. Dist. v. Ray*, No. 06-08-00129-CV, 2009 Tex. App. LEXIS 1269, *5 (Tex. App.—Texarkana Feb. 24, 2009, no pet.) (mem. op.). A nurse is not a physician and therefore is neither an expert nor is qualified to render an expert opinion regarding causation. TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.351(r)(5)(D); 74.403(a) (Vernon Supp. 2009).

Accordingly, the nurse's report, standing alone, is not an expert report. And because there is no report as to the direct liability claims against CSMC, there is no report as to the vicarious liability claims against CSMC. *See Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671-672 (Tex. 2008) ("When a party's alleged health care liability is purely vicarious, a report that adequately implicates the actions of that party's agents or employees is sufficient.").

But Todd counters that no report on causation is required because the link between Todd's self help to the restroom, her fall, and her injuries is a link that a layperson can determine. The cases Todd relies on do not pertain to a Chapter 74 expert report in health care liability cases but pertain only to testimony regarding proof of causation at a trial on the merits. *See Guevara v. Ferrer*, 247 S.W.3d 662 (Tex. 2007); *State Office of Risk Mgmt. v. Larkins*, 258 S.W.3d 686 (Tex. App.—Waco 2008, no pet.);

*Columbia Med. Ctr. Subsidiary, L.P. v. Meier*, 198 S.W.3d 408 (Tex. App.—Dallas 2006, pet. denied); *see also Morgan v. Compugraphic Corp.*, 675 S.W.2d 729 (Tex. 1984) (default judgment that was reversed by court of appeals for insufficient proof of causation; Texas Supreme Court reversed).

The issue at this point in the proceeding, though, is not a determination of the merits of the claim. In submitting an expert report pursuant to Chapter 74, a plaintiff need not marshal all of her proof. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001). Further, the Texas Supreme Court has held that the Legislature intended health care liability claims to be scrutinized by an expert or experts *before* the suit can proceed. *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005). As the Supreme Court has stated, the expert report requirement

> … establishes a threshold over which a claimant must proceed to continue a lawsuit. It does not establish a requirement for recovery. It may be that once discovery is complete and the case is tried, there is no need for expert testimony… But the Legislature envisioned that discovery and the ultimate determination of what issues are submitted to the factfinder should not go forward unless at least one expert has examined the case and opined as to the applicable standard of care, that it was breached, and that there is a causal relationship between the failure to meet the standard of care and the injury, harm, or damages claimed.

*Id*. Thus, Todd's statutory obligation to file a timely expert report remains even if causation is commonly understood. *See Hector v. Christus Health Gulf Coast*, 175 S.W.3d 832, 838 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

Therefore, because no timely report was filed, the trial court erred in failing to dismiss Todd's vicarious liability claims against CSMC. CSMC's first issue is sustained.

CSMC next contends that the trial court erred in denying CSMC's motion to dismiss Todd's alleged premises liability claim because the claim is an improper recasting of Todd's health care liability claim.

In determining whether a particular case presents a "health care liability claim," we examine the underlying nature of the allegations. *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543-44 (Tex. 2004). We focus on the *essence* of the claim and consider the alleged wrongful conduct and the duties allegedly breached, rather than the injuries suffered. *See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005). Further we are not bound by the party's characterization of the claim. *Id*. A claimant cannot escape the Legislature's statutory scheme by artful pleading. *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005).

In her original petition, Todd stated, "This is a health care liability claim." She then alleged in paragraph VI that

> COLLEGE STATTION MEDICAL CENTER, LLC, its nurses and
staff were negligent in at least the following particulars, to wit:

> A. Failure to adequately and timely assess, establish nursing diagnoses, plan, implement and evaluate ALMA DOREEN TODD'S care and condition;

> B. Failure to hire and train appropriate personnel to monitor, supervise and/or treat ALMA DOREEN TODD;

> C. Failure to render timely and appropriate medical treatment and nursing intervention to ALMA DOREEN TODD;

D. Failure to provide ALMA DOREEN TODD with adequate supervision and assistive devices to prevent falls and injury;

E. The retention of unfit, unqualified and incompetent staff;

F. Failure to provide sufficient numbers of staff to meet said patient's fundamental care needs;

G. Failure to provide the patient with quality care, e.g., the necessary care and services to attain, or maintain, the highest practicable physical, mental and psychosocial well-being, in accordance with the assessment and care plan;

H. In failing to provide adequate nursing care considering the medication schedule, physical and metal condition, health and body size of ALMA DOREEN TODD;

I. Failure to formulate and implement a sufficient care plan regarding the fundamental care needs of ALMA DOREEN TODD;

J. Failure to report and document ALMA DOREEN TODD'S condition, treatment and response in accordance with accepted nursing standards and practices that are completely and accurately documented; and,

K. Failure to provide ALMA DOREEN TODD with quality of life, dignity and respect with all care necessary to achieve the highest possible level of health.

Following the initial hearing on CSMC's two motions to dismiss where the trial court orally granted the motions as to these claims, Todd dropped these allegations. In her second amended petition, Todd deleted her statement that "[t]his is a health care liability claim." She then deleted her previous allegations in paragraph VI and instead, alleged the following.

As alleged hereinbefore, Plaintiff was a patient at COLLEGE STATION MEDICAL CENTER, LLC and was an invitee upon the premises owned, occupied and controlled by COLLEGE STATION MEDICAL CENTER, LLC. Plaintiff because a patient at COLLEGE

STATION MEDICAL CENTER, LLC by virtue of agreeing to pay COLLEGE STATION MEDICAL CENTER, LLC for room, board, basic household services, personal assistance when needed, nursing services, medication and use of the facilities, particularly the use of a hospital room, the room's bed and the room's restroom facility. The Plaintiff's room contained a bed which was equipped with bedrails. The room was also equipped with a call button which allowed Plaintiff to electronically summon hospital personnel to her room. On the occasion of the accident in question, Plaintiff attempted to summon hospital personnel to her room by use of the electronic call button mechanism so that she could receive assistance to go to the room's restroom facility. However, no one responded. Failing to receive assistance, Plaintiff then got out of her bed and attempted to walk to the restroom without assistance. Because Plaintiff was elderly, recovering from surgery, wearing a sequential pressure device, and had been given a sedative, Plaintiff fell and was thereby severely injured. Had COLLEGE STATION MEDICAL CENTER, LLC'S employees responded to the Plaintiff's electronic call for assistance in a timely manner and/or had the bedrails on Plaintiff's bed been put in the raised position, Plaintiff's fall would not have occurred.

Todd further alleged

> Answering a patient's electronic call for assistance does not implicate professional health care expertise judgment or discretion. Rather, answering the Plaintiff's call was mandatory and nondiscretionary inasmuch as it was one of the bundle of services that Plaintiff was paying for and that COLLEGE STATION MEDICAL CENTER, LLC had agreed to provide. Furthermore, the failure to raise the bedrails on Plaintiff's bed under the circumstances created an unreasonably dangerous physical condition (premises defect) of which COLLEGE STATION MEDICAL CENTER, LLC'S employee(s) had actual notice which, in turn, proximately caused Plaintiff's injuries and damages. The creation of or failure to cure this unreasonably dangerous condition does not implicate health care expertise or professional judgment. Rather, it is (was) a negligent failure to utilize or engage the safety features of the Plaintiff's hospital bed in the manner which was intended by the manufacturer and in the manner required by COLLEGE STATION MEDICAL CENTER, LLC'S own policies, practices, procedures and rules.

The obligation of a health care facility to its patients is not the same as the

general duty a premises owner owes to invitees. *Diversicare*, 185 S.W.3d at 851; *NCED*

*Mental Health, Inc. v. Kidd*, 214 S.W.3d 28, 37 (Tex. App.—El Paso 2006, no pet.). Health

care staff make judgments about the care, treatment, and protection of individual patients and the patient populations in their facilities based on the mental and physical care the patients require. *Id.* This is distinct from the duty of ordinary care owed by premises owners to their residents and invitees. *See id.* Focusing on the essence of the claims, Todd's "new" allegation constitutes a health care liability claim because it is based on a claimed departure from the standards of care related to health care, safety, and professional and administrative services directly related to health care. In this regard, it is nothing more than an improper effort to recast the prior pleading, which is clearly a health care liability claim, as only a premises defect when the substance of the claim remains unchanged.

Accordingly, the trial court erred in failing to dismiss this claim as well because no report was timely filed. CSMC's second issue is sustained.

## CONCLUSION

Having sustained both of CSMC's issues on appeal, we reverse the trial court's order and remand this case for further proceedings consistent with this opinion.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
        Justice Reyna, and
        Justice Davis
Reversed and remanded
Opinion delivered and filed September 1, 2010
[CV06]